UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY BRUNSMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-01012-JPH-MJD |
| | ) |
| FRANCISCAN ALLIANCE, INC. | ) |
| d/b/a FRANCISCAN HEALTH | ) |
| INDIANAPOLIS, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Ashley Brunsman alleges that her employer discriminated against her when it refused to consider her request for an accommodation based on her religious beliefs and then terminated her employment because of her religion. Defendant has filed a motion for summary judgment. Dkt. [41]. For the reasons below, that motion is **GRANTED**.

**I.
Facts and Background**

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Ms. Brunsman worked for Franciscan Alliance, Inc. d/b/a Franciscan Health Indianapolis ("Franciscan") as a registered nurse. Dkt. 41-3 at 15:6–12; *see* dkt. 1 at 2 ¶ 9.

1

In November 2021, the Centers for Medicare and Medicaid Services ("CMS") promulgated an interim final rule ("the CMS Rule") implementing COVID-19 vaccination requirements for the staff of Medicare- and Medicaid-certified providers and suppliers. Dkt. 42 at 3 ¶ 5; 86 Fed. Reg. 61555 (Nov. 5, 2021). Franciscan was covered by the CMS Rule, which would be implemented in two phases: Phase 1 required staff to have either received the first dose of a COVID-19 vaccine or requested an exemption, and Phase 2 required all staff be fully vaccinated or have an approved exemption on file:

> Phase 1, effective 30 days after publication, includes nearly all provisions of this [interim final rule], including the requirements that all staff have received, at a minimum, the first dose of the primary series or a single dose COVID-19 vaccine, or requested and/or been granted a lawful exemption, prior to staff providing any care, treatment, or other services for the facility and/or its patients. . . .
>
> Phase 2, effective 60 days after publication, consists of the requirement that all applicable staff are fully vaccinated for COVID-19, except for those staff who have been granted exemptions from COVID-19 vaccination or those staff for whom COVID-19 vaccination must be temporarily delayed, as recommended by the CDC, due to clinical precautions and considerations).

86 Fed. Reg. 61555 (Nov. 5, 2021).

Providers or suppliers that failed to comply with the rule could be "subject to enforcement remedies," including termination of their Medicare/Medicaid provider agreement. *Id.*

Franciscan initially informed employees that November 22, 2021, was the deadline to submit proof of vaccination or a request for accommodation. Dkt. 41-4 at 2 ¶ 11. That deadline was later extended to December 4, 2021, and again to February 14, 2022, which became the final deadline. Dkt. 42 at

2

4–5 ¶¶ 10–12, 7 ¶ 25; see CMS Supplemental Guidance Memorandum Ref. QSO-22-ALL (Jan. 14, 2022). These deadline extensions were in response to ongoing litigation related to the CMS Rule. Dkt. 42 at 6–7 ¶¶ 21–24.

Franciscan notified its employees of these deadlines via email. Dkt. 41-4 at 2–5 ¶¶ 11–19; id. at 13–18, 19–21, 23–25. Franciscan also issued a "Vaccination Policy" and directed employees to review it. Id. at 27–33. Ms. Brunsman received these emails but only read the initial emails in early December, as she did not always check her email at work. Dkt. 41-3 at 21:6–14, 46:16–48:20, 51:9–10, 57:22–25. Ms. Brunsman did not refer to the final vaccine policy, id. at 65:13–16, and does not remember if she ever looked at Franciscan's vaccination policy FAQs, Franciscan's COVID-19 Resource Center, or the COVID-19 System Resource page, though she doesn't believe she did. Id. at 61:6–62:16. Regardless, it's undisputed that she knew of the February 14 final deadline to file a request for religious accommodation. Dkt. 41-3 at 67–68.

Ms. Brunsman was pregnant and concerned about whether the vaccine was safe to take during pregnancy, so in December or January she asked her primary care doctor and OB/GYN about receiving a medical exemption. Dkt. 41-3 at 23:15-19, 25:7-16. But those doctors were both employed by Franciscan and therefore not authorized to give exemptions from Franciscan's policy. Id. at 23:1–8. Ms. Brunsman did not seek a medical exemption from any other provider. Id. at 39:15–40:14.

3

In December 2021, Ms. Brunsman attempted to access the religious exemption form via a link in one of the emails that Franciscan sent out, but the link didn't work. *Id.* at 28:2–29:21. She did not contact IT for assistance, saying "I don't know if I just expected someone else to or what, but I did not," and does not remember if she reached out to HR about it. *Id.*; *id.* at 52:13-25.

Ms. Brunsman considered seeking a religious exemption. Dkt. 41-3 at 90:12–22. She "want[ed] to talk to [her] priest and see if it's against [her] religious beliefs" before deciding whether to submit a request for an exemption, as she "did not believe . . . that [her reason for not getting the vaccine] was a religious reason" prior to talking to the priest. Dkt. 41-3 at 54:3–8; 24:5–15. Mr. Brunsman's supervisor, Cindy Frankel, told her that the deadline for applying for an exemption request was February 14, 2022. Dkt. 41-3 at 68:4–13.

On February 11, 2022, Ms. Frankel asked Ms. Brunsman if she would be filing an exemption. Dkt. 41-3 at 85; *see* dkt. 1-2 at 1. Ms. Brunsman responded "right now I'm just continuing as is. Will speak with our priest Sunday." *Id.* Ms. Frankel responded that Ms. Brunsman would be placed on suspension starting February 14th if she did not have paperwork to submit by the deadline. *Id.* Ms. Brunsman replied "Yes." *Id.* Up until around this point in time, Ms. Brunsman did not think Franciscan would actually enforce the vaccine policy—she thought that Franciscan needed her to continue working because they were short-staffed. Dkt. 41-3 at 68:14–21; 59:1–7.

4

Ms. Brunsman did not submit an exemption request by the February 14 deadline and was notified that she was suspended. Dkt. 41-3 at 59:18–25; dkt. 41-4 at 5 ¶¶ 21–22. Ms. Frankel explained that she could no longer submit a religious exemption request after the due date, dkt. 41-3 at 59, and Ms. Frankel asked Ms. Brunsman if she planned to resign. *Id.* at 80. Ms. Brunsman insisted she did not. *Id.*

Ms. Brunsman did not speak with her priest until February 16, 2022. Dkt. 41-3 at 89–90. Thereafter, she attempted to access the religious exemption form, but it was no longer available as the deadline for submitting a religious exemption had passed. Dkt. 41-3 at 66:6–15; *id.* at 74:2–18. Nonetheless, she submitted a religious exemption request on February 22, 2022, by emailing HR. *Id.* at 75:18–22; *see* dkt. 1-2. Three days later, on February 25, Ms. Brunsman was notified that her request was denied because the opportunity to submit a religious exemption request had passed. Dkt. 41-3 at 30:15–21. Ms. Brunsman's employment was terminated on April 22, 2022, for failure to comply with the vaccination policy. Dkt. 41-4 at 5 ¶ 24.

Franciscan received 278 requests for religious exemptions at its Indianapolis facility before the February 14, 2022, deadline. Dkt. 41-5 at 5–6 ¶ 16. Ms. Brunsman was the only Franciscan employee who submitted a religious exemption request after the deadline. Dkt. 41-2 at 10 ¶ 9.

Ms. Brunsman alleges that Franciscan discriminated against her when it refused to consider her request for an accommodation based on her religious beliefs and then terminated her employment because of her religion, in

5

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Dkt. 1 at 5 ¶¶ 25–26. Franciscan has moved for summary judgment. Dkt. 41.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

## III.
## Analysis

Title VII prohibits employment discrimination based on, among other things, religion. 42 U.S.C. § 2000e. The term "religion" includes all aspects of religious belief, observance, and practice. 42 U.S.C. § 2000e(j). An employer is required to "reasonably accommodate" employees' religious practices unless doing so would impose an "undue hardship on the conduct of the employer's business." *Id.* A failure to accommodate is a type of religious discrimination claim under Title VII. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

Here, Ms. Brunsman brings Title VII claims against Franciscan, alleging that it discriminated against her because of her religion, first by refusing to

6

consider her request for an exemption from the mandatory vaccination requirement and then by terminating her employment for failure to comply with the vaccination requirement.  Dkt. 1 at 5–6.  The same analysis applies to both claims as each alleges discrimination because of religion.

Franciscan argues that it was not required to consider Ms. Brunsman's request for exemption because the request was not submitted by the February 14, 2022, deadline, which Franciscan imposed based on the CMS Rule.  Dkt. 42 at 18.  Franciscan further argues that it terminated Ms. Brunsman's employment for her failure to comply with Franciscan's vaccination policy, which was also based on the CMS Rule.  *Id.* at 13.  Ms. Brunsman responds that Franciscan is not entitled to summary judgment on her failure to accommodate claim because it unlawfully set a deadline for seeking religious accommodation.  Dkt. 52 at 3.  As to the termination of her employment, Ms. Brunsman argues that Franciscan is not entitled to summary judgment because there are facts from which a jury could infer that Franciscan knew that Ms. Brunsman had religious beliefs that conflicted with the mandatory vaccination policy.  *Id.* at 5.

To prevail on a failure-to-accommodate claim under Title VII, a plaintiff must show (1) a religious observance or practice conflicting with an employment requirement, (2) that was called to the employer's attention, and (3) that the religious observance or practice was the basis for discharge or other discriminatory treatment.  *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024); *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012).

7

Once the plaintiff makes out a prima facie case of discrimination, the burden shifts to the employer to show that reasonable accommodation would result in undue hardship. *Passarella*, 108 F.4th at 1009; *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

In evaluating a Title VII claim, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie*, 575 U.S. at 773. In other words, an employer violates Title VII if "the employer's desire to avoid the prospective accommodation is a motivating factor" underlying the adverse employment decision. *Id.* The analysis turns on evidence of the employer's motive:

> [I]ntentional discrimination provision prohibits certain *motives*, regardless of the state of the actor's knowledge. Motive and knowledge are separate concepts. An employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his *motive*. Conversely, an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed.

*Id.* This standard "prohibit[s] even making a protected characteristic a 'motivating factor' in an employment decision." *Id.*

Here, Franciscan argues that it refused to consider Ms. Brunsman's request for a religious exemption from the mandatory vaccination policy because it was not submitted by the February 14 deadline. Dkt. 42 at 13. Ms. Brunsman does not dispute that she knew of that deadline and argues that it

8

was unlawful for Franciscan to impose any deadline for submitting a request for a religious exemption from the mandatory vaccination policy. Dkt. 52 at 3. But the authorities she cites in support of that proposition miss the mark. For instance, in *Hampton-Davis v. Froedtert Health, Inc.*, the district court noted that denying an employee's religious accommodation request based on a company-wide policy does not, in and of itself, mean that religion could not have been a motivating factor underlying an adverse employment decision. 2024 WL 3410700 at *7 (E.D. Wis. July 15, 2024). The court did not hold that all company policies setting exemption deadlines were necessarily impermissible, but that "the propriety of a deadline is dependent on whether the accommodation would impose an undue burden" and that, in that case, the employer had not shown it had terminated Ms. Hampton-Davis for a nondiscriminatory reason. *Id.* Importantly, the employer in *Hampton-Davis* did not rely on the CMS Rule, or other state or federal law, or policy in creating its deadlines.

Here, the designated evidence shows that Franciscan's deadline was tied to the deadlines mandated by the CMS Rule. Ms. Brunsman contends that the requirements of Title VII trump the CMS Rule, so Franciscan cannot rely on the CMS Rule as a reason for having imposed a deadline for vaccine exemption requests (and, consequently, for not considering her late request). Dkt. 52 at 3–5. But there is no conflict between Title VII and the CMS Rule. The CMS Rule acknowledged that "some individuals . . . might be eligible for exemptions from the COVID-19 vaccination requirements" imposed by the rule, and

9

accordingly required employers to "establish and implement a process by which staff may request an exemption from COVID-19 vaccination requirements based on applicable Federal law" including Title VII of the Civil Rights Act of 1964. 86 Fed. Reg. 61555 (Nov. 5, 2021). The designated evidence shows that's exactly what Franciscan did. Dkt. 41-4 at 8–33. Ms. Brunsman designates no evidence from which a jury could conclude that Franciscan's decision to not consider her exemption request was motivated by a desire to avoid the need accommodate her religious practice. *Abercrombie*, 575 U.S. at 773.

Next, Franciscan argues that it could not have based its refusal to consider Ms. Brunsman's request for an exemption on her religious beliefs because it did not know that Ms. Brunsman would be seeking an exemption. In support of this argument, Franciscan cites Ms. Brunsman's statement that she would be "continuing as is" (that is, without an exemption) prior to the deadline, and contending that Ms. Brunsman herself did not know prior to meeting with her priest whether she might request a religious accommodation or not. Dkt. 55 at 16–17. Franciscan further argues that regardless of what it knew about whether and why Ms. Brunsman would seek an exemption, it is entitled to summary judgment because the designated evidence shows that Ms. Brunsman was terminated because of her failure to comply with the vaccine policy. *Id.*; dkt. 42 at 13.

Ms. Brunsman argues that Franciscan refused to consider her exemption request and terminated her employment despite knowing that her religious

10

beliefs conflicted with the mandatory vaccination policy. In support of this argument, she designates evidence showing that she had told her supervisor she was going to meet with her priest about requesting a religious exemption. Dkts. 52 at 5; 41-3 at 68. Ms. Brunsman argues that there is a question of material fact that precludes summary judgment—whether her conversations with her supervisor, Ms. Frankel, put Franciscan on notice that Ms. Brunsman wished to request a religious exemption.

But even if Franciscan knew Mr. Brunsman wanted to seek a religious exemption, that does not create a triable issue of fact that precludes summary judgment. Ms. Brunsman designates no evidence from which a jury could reasonably conclude that Franciscan had any motive of avoiding a religious accommodation when it suspended Ms. Brunsman and subsequently terminated her employment. Franciscan alerted its employees—including Ms. Brunsman—to the existence of the mandatory vaccination policy, the deadlines by which employees needed to submit proof of vaccination or exemption requests, and the possible penalties for not complying with those deadlines. *See* dkt. 41-4 at 3–5 ¶¶ 11–19; dkt. 42 at 13–18, 19–21, 23–25. The mandatory vaccine policy was in place due to the CMS Rule, which required all employees to have either an approved or pending religious exemption request by the deadline. Dkt. 41-4; 86 Fed. Reg. 61555 (Nov. 5, 2021).

Under Title VII, an employer is not required to accommodate an employee's religious beliefs if doing so would require the employer to violate the law. *Jackson v. Methodist Health Servs. Corp.*, 121 F.4th 1122, 1127 (7th Cir.

11

2024). *Jackson*, which was decided after the parties completed their summary judgment briefing, is instructive. There, the governor of Illinois issued an executive order requiring healthcare workers to be vaccinated against COVID-19. Individuals who were not fully vaccinated were required to wear a mask while working and were later required to undergo weekly COVID testing. *Id.* at 1124. Ms. Jackson, a nurse, received a religious exemption from Methodist, conditioned on Ms. Jackson complying with the testing requirement. *Id.* Ms. Jackson objected to the testing requirement, refused to comply with it, and was consequently suspended and then terminated. *Id.* She sued Methodist for failing to accommodate her religious beliefs in violation of Title VII, among other counts, and the district court dismissed her complaint for failing to state a claim. *Id.* at 1125.

Affirming the dismissal, the Seventh Circuit noted that "[t]he employer's duty under Title VII is to *reasonably* accommodate an employee's religious beliefs," and that conditioning a religious exemption on compliance with mandatory testing required by the executive order was reasonable. *Id.* at 1127. The Seventh Circuit further noted that Ms. Jackson had not "explained why Methodist had the authority to exempt her from testing when the governor's executive order expressly required such testing." *Id.* at 1128.

Here, Franciscan's vaccination policy deadlines were required by the CMS Rule. *See* dkt. 41-4. The Rule required providers like Franciscan to be in compliance with the policy by certain dates, with the failure to do so carrying the potential penalty of termination from the Medicare/Medicaid provider

12

agreement.  86 Fed. Reg. 61555 (Nov. 5, 2021).  So, Franciscan had to ensure that, by the CMS February 14 deadline, all covered employees had either received the COVID-19 vaccine or requested an exemption.  Faced with the potential sanction of exclusion from Medicare and Medicaid, Franciscan implemented a deadline based on the CMS Rule.  Dkt. 41-4; 86 Fed. Reg. 61555 (Nov. 5, 2021).  It's undisputed that Ms. Brunsman knew of the February 14, 2022, deadline for having either received the vaccination or requested a religious exemption and that she did not do either before the February 14, 2022, deadline.  Dkt. 42 at 16-17, 19.  It was reasonable for Franciscan to enforce requirements imposed by the CMS Rule.  *See Jackson*, 121 F.4th at 1127; *Lowe v. Mills*, 68 F.4th 706, 719–20 (1st Cir. 2023) (granting religious exemption to COVID-19 vaccine policy would require health care employers to violate state mandate and face monetary penalties and risk of license suspension, which is an undue hardship).

\* \* \*

Franciscan terminated Ms. Brunsman's employment because she failed to comply with the vaccination policy that required employees to have either been vaccinated or submitted an exemption request by February 14.  Ms. Brunsman has designated no evidence from which a jury could infer that her religious observance and practice was a motiving factor for Franciscan's decision to not accept her late application and terminate her employment.

Therefore, her religious discrimination claims fail and Franciscan is entitled to summary judgment.

## IV.
## Conclusion

For the above reasons, Defendant's motion for summary judgment is **GRANTED**. Dkt. [41]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 1/29/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel